**IN THE FEDERAL DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

BELIGH SRAIEB,

Plaintiff,

v.

NORTHEAST ILLINOIS REGIONAL
COMMUTER RAILROAD
CORPORATION, d/b/a METRA,

Defendant.

Case No.: 21-cv-4263

**COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff BELIGH SRAIEB, by and through undersigned counsel,

bringing this Complaint and Jury Demand against Defendant NORTHEAST ILLINOIS

REGIONAL COMMUTER RAILROAD CORPORATION, d/b/a METRA, for violations of 42

U.S.C. § 1981 for race discrimination and retaliation, and state supplemental law claims under

the Illinois Human Rights Act for ancestry and religious discrimination, hostile work

environment and retaliation.  In support of his claims, Plaintiff states as follows:

**JURISDICTION AND VENUE**

1.      Jurisdiction is proper under 28 U.S.C. § 1331 because this action arises under the

laws of the United States.  This action is brought pursuant to 42 U.S.C. § 1981 for race

discrimination.  Plaintiff filed three charges of discrimination with the Illinois Department of

Human Rights ("IDHR").  Plaintiff filed his first charge with the IDHR on or about October

29, 2019.  On or about October 6, 2020, IDHR issued a notice of right to sue that would have

expired on February 15, 2021.  On February 12, 2021, the parties entered into an agreement

to toll the statute of limitations on Plaintiff's right to sue until August 10, 2021.  Plaintiff

filed a second amended charge with the IDHR on June 20, 2020.  On or about May 26, 2021,

IDHR issued a Notice of Substantial Evidence and Notice of Dismissal, giving Plaintiff until

August 24, 2021 to pursue the claims in his second amended charge.  This Court has

supplemental jurisdiction over Plaintiff's state claims arising under the Illinois Human Rights

Act pursuant to 28 U.S.C. § 1367.

2.      Venue is proper under 28 U.S.C. § 1391(b).  The parties reside and/or conduct

business in this judicial district, and the events giving rise to the claims asserted herein

occurred in this judicial district as well.

### THE PARTIES

3.      Plaintiff BELIGH SRAIEB ("Plaintiff") has been an employee of Defendant since

October 24, 2016.  Plaintiff's most recent position at Defendant was locomotive engineer.

4.      Defendant NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD

CORPORATION, d/b/a METRA ("Defendant") is a commuter railway corporation that

conducts business in Chicago, Illinois and its surrounding area.  At all times relevant in this

Complaint, Defendant employed Plaintiff.

### FACTUAL ALLEGATIONS

5.      Born in Tunisia, Plaintiff is an Arab and he is Muslim.

6.      Plaintiff was hired by Defendant as a locomotive engineer on or about October

24, 2016.  Plaintiff operates Defendant's passenger trains.

7.      Plaintiff was performing his duties as a locomotive engineer in a satisfactory or

above-satisfactory manner at all times during his employment.

8.     During and throughout his employment at Defendant, Plaintiff was the subject of offensive, harassing and hostile remarks made about his religion, ethnicity and national origin by other employees at Defendant.

9.     The offensive, harassing and hostile remarks were made directly to Plaintiff or were made indirectly, such as over Defendant's radio communications system or over social media.

10.     Plaintiff made Defendant aware of the harassment, including which employees were responsible for the harassment.

11.     This included, but is not limited to, one incident in January of 2017 when, while watching the presidential inauguration, employees yelled at Plaintiff, "F**k your Allah," and "your Allah tells you to kill people." When Plaintiff told the employees to stop, he was reported to management.

12.     Employees at Defendant maintained an unofficial Facebook group for Defendant's employees. On the group's page, members would post and promote anti-Muslim statements, misinformation and propaganda.

13.     Beginning in or around April of 2017, Plaintiff applied for several promotions within Defendant. Since April of 2017, Plaintiff has applied to 16 positions and has undergone 8 interviews.

14.     In or around July of 2019, Plaintiff applied and was interviewed for a position as Road Foreman of Engines. Plaintiff was qualified for the position. The position would have been a promotion from Plaintiff's Locomotive Engineer position.

15.     After Plaintiff applied for the position of Road Foreman of Engines, Defendant removed the posting for the position and re-posted it multiple times in order to lower the

qualifications for the position. Upon information and belief, this was done in order to recruit lesser-qualified individuals for the position because Defendant did not want to give the position to Plaintiff, even though he was qualified.

16. On or about August 15, 2019, the position was offered to a less-qualified employee, Dave Kinkade, who is not Muslim or Arab. Kinkade had harassed Plaintiff for being Muslim and Arab, and Defendant was aware of such harassment. This resulted in Kinkade, one of Plaintiff's harassers, assuming a direct supervisory role over him.

17. Plaintiff also applied for a promotion to become Senior PTC Train Operations Engineer on or about October 7, 2019. Plaintiff was qualified for the position.

18. Plaintiff applied for the Senior PTC Train Operations Engineer position at least three (3) times. Each time the position was posted, the qualifications were changed in order to make it easier for others to apply for the position.

19. Plaintiff was not selected for the Senior PTC Train Operations Engineer position. Rather, the position went to another employee who is not Muslim or Arab. Upon information and belief, the individuals selected for the position were less qualified than Plaintiff because they did not have previous experience with the positive train control (PTC) system and did not have the territory qualifications Plaintiff had.

20. Plaintiff also applied for a promotion to a Trainmaster position on or about July 31, 2019. Plaintiff was qualified for the position. Plaintiff applied for the position at least twice.

21. The second time Plaintiff applied for the position, Defendant lowered the qualifications for the position so that other less qualified employees could apply.

22.     Plaintiff was not selected for the Trainmaster position.  Rather, the position went to another employee who is not Muslim or Arab.  Upon information and belief, the individuals selected for this position were less qualified than Plaintiff because they did not have the rules qualifications that Plaintiff had.

23.     Rules qualifications are tested each year to determine an employee's aptitude and understanding of the rules required for operating guidelines in the railroad industry.  Each person is given a score each year, which is in part used to evaluate an individual's overall qualifications and performance.

24.     Upon information and belief, Defendant employs a policy or practice of showing preferential treatment in hiring and promoting White or Caucasian employees over persons of color.

25.     On or about August 15, 2019, Kinkade, a White/Caucasian, was promoted to become Plaintiff's supervisor.  Plaintiff complained to the District Superintendent and to Defendant's EEO department.  Plaintiff told the EEO he did not feel safe at work with Kinkade as his supervisor because of the prior harassment.

26.     Upon information and belief, District Superintendent for the Chicago Union Station Victor Flores told Kinkade that Plaintiff had made a complaint about him.  Kinkade left harassing messages to Plaintiff, including a text message in which he called Plaintiff mentally unstable.

27.     Following his complaints, Plaintiff began to receive harassing comments made by anonymous employees over Defendant's radio communications system.  These comments included direct references to Plaintiff's EEO complaint.

28.     Plaintiff was also assigned more onerous work than other employees in his department.

29.     Plaintiff's supervisors also subjected Plaintiff to more frequent operational tests than other employees in the department.

30.     Upon information and belief, sometime in September of 2019 Kinkade, a supervisor, told a room full of his subordinate employees that Plaintiff had complained about him to Defendant's EEO.

31.     Upon information and belief, Kinkade gave employees the green light to harass Plaintiff and to retaliate against him for complaining to Defendant's EEO.

32.     Upon information and belief, Plaintiff's supervisors (other than Kinkade) told other employees at Defendant that Plaintiff was a "snitch" and that he could not be trusted because of his EEO complaint.

33.     Shortly after Plaintiff made his EEO complaint and while it was still pending, Kinkade and Trainmaster Robert Tellin (another supervisor) required Plaintiff to undergo an operational performance test.  No reason was given for having Plaintiff undergo the test. Moreover, Plaintiff was required to undergo the test in the presence of Kinkade.  Upon information and belief, Tellin was aware of Plaintiff's complaints about Kinkade.

34.     Operational performance tests are periodically administered, typically once every few months.  After Plaintiff complained about Kinkade to Defendant's EEO, he was administered an OPT test every few weeks.

35.     Kinkade was demoted after Erick D. Allen from Defendant's EEO department recommended the demotion.  Upon information and belief, Allen was retaliated against by Defendant for finding in favor of Plaintiff.

36.     Upon information and belief, on or about September 26, 2019 Kinkade told another employee that he was fired from his job as Road Foreman of Engines because of Plaintiff, and that he should not trust or talk to Plaintiff.

37.     Also on September 26, 2019, Plaintiff received information from another employee that several employees, including Trainmaster Kevin Lynch and Engineer Michael Dering, planned to accuse Plaintiff of being a Muslim terrorist and send pictures to Defendant of explosives wrapped around animals, and threatened Plaintiff's job and well-being.

38.     Upon information and belief, the engineers were instructed to not to talk to Plaintiff and to give him the cold shoulder, thus isolating him from his coworkers.

39.     On or about October 11, 2019, Plaintiff was subjected to another operational efficiency test, this time by Senior Trainmaster Adam Farence.  No reason was given for requiring Plaintiff to undergo the extra testing.

40.     On or about December 7, 2019, senior PTC test engineer Tom Alonzo told another employee that Plaintiff "better watch his back" because they "had dirt on him."

41.     Upon information and belief, several managers at Defendant had private discussions about getting Plaintiff decertified from work.

42.     Other employees at Defendant made false reports about Plaintiff, defaced Plaintiff's name on a publicly posted printed roster, and disparaged him to others because of his EEO activity.  For example, upon information and belief Senior Trainmaster Tellin told others that Plaintiff was suing Defendant and that he sued "for a living."

43.     The defaced roster was posted in front of Trainmaster Kevin Lynch's office for several months.  Plaintiff reported the defaced roster to Defendant's EEO.

44.     On March 21, 2020, Plaintiff experienced a fatality while operating a train; a person committed suicide by stepping in front of the train Plaintiff was operating.  Per Defendant's policy, Defendant (specifically, Senior Trainmaster Farence) was supposed to notify Plaintiff by March 23 regarding the fatality to let him know whether any violation of policy was alleged to have occurred.  Despite the policy, Defendant waited until April 1 to contact Plaintiff to let him know he had been cleared of any wrongdoing.  Upon information and belief, this was done so as to cause Plaintiff extreme anxiety and emotional anguish.  Plaintiff used vacation time to seek counseling for the incident and was diagnosed with post-traumatic stress disorder as a result.  Plaintiff reported the failure to inform to Defendant's EEO.

45.     Following the incident and PTSD diagnosis, Plaintiff requested paid leave to recover before returning to work.  His request was denied.  Plaintiff was provided with only three days of paid leave, and any additional leave would be unpaid.

46.     Upon information and belief, other employees at Defendant who did not engage in protected activity, and who required leave because of similar fatalities, were given two weeks of paid leave.

47.     Plaintiff filed discrimination and retaliation charges with the Illinois Department of Human Rights.  Plaintiff's first charge was filed on October 29, 2019, his second amended charge was filed on June 10, 2020, and a third charge for retaliation was filed on April 19, 2021.

48.     Since engaging in the protected activity, supervisors at Defendant have attempted or threatened to discipline Plaintiff for unwarranted reasons.  Upon information and belief this is because of Plaintiff's protected activity of reporting harassment and discrimination.

49.    For example, on October 2, 2020, four days after Plaintiff participated in a fact-finding conference by the Illinois Department of Human Rights, Senior Trainmaster Farence threatened to charge Plaintiff with an alleged schedule violation from two months prior.

50.    Per Article 44, part B of the collective bargaining agreement, Defendant must inform an employee of discipline within ten days of the alleged conduct warranting discipline.

51.    After attorney intervention, Plaintiff was ultimately not disciplined for the alleged schedule violation.  However, the threat of discipline by his superior caused Plaintiff significant anxiety and great emotional anguish because it further signaled to him that his superiors were looking for any reason to terminate him.

52.    In January of 2021, Plaintiff's log hours were audited by Senior Trainmaster Farence.  Farence wrote negative comments in the audit regarding Plaintiff's logbook over issues that Defendant, or Farence, had never raised before.

### COUNT I: § 1981 Claim for Race Discrimination and Retaliation

53.    Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

54.    Plaintiff is an Arab American.

55.    Plaintiff performed his job well and he was qualified for the promotions to which he applied.

56.    Defendant discriminated against Plaintiff when it selected other less qualified, non-Arab individuals for the promotions over Plaintiff.

57.    Defendant also discriminated against Plaintiff when it subjected him to different terms and conditions of employment than other non-Arab employees.  This includes, but is not limited to, Defendant permitting Plaintiff's harassers to create a hostile work

environment for him and refused to take the actions necessary to stop the harassment even after he complained to Defendant's EEO.

58.     Defendant's discriminatory and retaliatory conduct caused Plaintiff damages, including, but not limited to, lost potential earnings and emotional harm.

**COUNT II: Religious Discrimination under the Illinois Human Rights Act**

59.     Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

60.     Plaintiff is Muslim American.

61.     Plaintiff performed his job well and he was qualified for the promotions to which he applied.

62.     Defendant discriminated against Plaintiff when it selected other less qualified, non-Muslim individuals for the promotions over Plaintiff.

63.     Defendant also discriminated against Plaintiff when it subjected him to different terms and conditions of employment than other non-Arab employees.  This includes, but is not limited to, Defendant permitting Plaintiff's harassers to create a hostile work environment for him and refused to take the actions necessary to stop the harassment.

64.     Defendant's discriminatory conduct caused Plaintiff damages, including, but not limited to, lost potential earnings and emotional harm.

**COUNT III: Ancestry Discrimination under the Illinois Human Rights Act**

65.     Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

66.     Plaintiff is an Arab American.

67.     Plaintiff performed his job well and he was qualified for the promotions to which he applied.

68.     Defendant discriminated against Plaintiff when it selected other less qualified non-Arab individuals for the promotions over Plaintiff.

69.     Defendant also discriminated against Plaintiff when it subjected him to different terms and conditions of employment than other non-Arab employees.  This includes, but is not limited to, Defendant permitting Plaintiff's harassers to create a hostile work environment for him and refused to take the actions necessary to stop the harassment.

70.     Defendant's discriminatory conduct caused Plaintiff damages, including, but not limited to, lost potential earnings and emotional harm.

**COUNT IV: Hostile Work Environment Based on Religion and Ancestry under the Illinois Human Rights Act**

71.     Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

72.     Plaintiff was employed at Defendant as a Locomotive Engineer.

73.     Defendant was aware that Plaintiff was Muslim and Arab.

74.     The harassment Plaintiff endured was based on his Islamic beliefs and Arab ancestry.

75.     The harassment was so severe or pervasive that it changed the conditions of employment and created a hostile work environment as perceived by Plaintiff and which any reasonable person would also find.

76.     The Defendant is liable because it knew about its employees' offensive, continuous conduct and yet failed to take the necessary corrective action.

77.     The harassment caused Plaintiff damages, including but not limited to lost income and emotional harm.

**COUNT V: Retaliation under the Illinois Human Rights Act**

78.     Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

79.     Plaintiff engaged in protective activity when he filed an internal EEO complaint regarding religious and ancestry discrimination that he experienced as well as when he filed a charge of religious and ancestry discrimination against Defendant with the Illinois Department of Human Rights ("IDHR").

80.     After plaintiff filed his internal EEO complaint, Defendant retaliated against Plaintiff in terms and conditions of his employment, including, but not limited to, when Plaintiff's supervisors informed his co-workers of the EEO complaint, discouraged co-workers from interacting with Plaintiff, harmed Plaintiff's reputation by labeling him as a "snitch" and someone not to be trusted, assigning more onerous work than other employees in his department, and subjected Plaintiff to more frequent operational testing than before filing his complaint.

81.     After plaintiff filed his second charge of discrimination with the IDHR (No. 2021 CF 2649) and four days after the IDHR fact-finding conference, Defendant retaliated against Plaintiff in terms and conditions of his employment by trying to discipline Plaintiff in blatant violation of the Collective Bargaining Agreement.

82.     As a proximate result of the practices alleged, Plaintiff has suffered and will continue to suffer substantial and irreparable injury, including but not limited to lost income and emotional harm.

83.     Defendant's actions were intentional, willful, and malicious, or were committed with reckless indifference to Plaintiff's protected rights under the Illinois Human Rights act and federal law.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE Plaintiff BELIGH SRAIEB respectfully requests the Honorable Court grant judgment in his favor and against Defendant, awarding:

    A.  Actual damages;

    B.  Compensatory Damages;

    C.  Punitive Damages;

    D.  An Injunction Prohibiting Defendant from Continuing Unlawful Employment Practices;

    E.  Costs;

    F.  Attorney's fees; and

    G.  Such other relief as the Court deems just and equitable.


Respectfully Submitted,
BELIGH SRAIEB
Plaintiff

By:

Christina Abraham, Esq.
Abraham Law and Consulting, LLC
161 N. Clark Street, Suite 1600
Chicago, IL 60601
(312) 588-7150
Christina.w.abraham@gmail.com

Janaan Hashim, Esq.
Amal Law Group, LLC
161 N. Clark Street, Suite 1600
Chicago, IL 60601
(312) 882-4122
jhashim@amallaw.com


Attorneys for Plaintiff

August 10, 2021