UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Beligh Sraieb,<br><br>            Plaintiff,<br><br>v.<br><br>Metra Northeast Regional Commuter Railroad Corp., a unit of local government, Victor Flores in his individual capacity, Adam Farence in his individual capacity, and Patricia Emanuel in her individual capacity,<br>            Defendants. | Case No. 21-cv-04263<br><br>Honorable Matthew F. Kennelly |

## FIRST AMENDED COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff BELIGH SRAIEB ("Plaintiff"), by and through undersigned counsel, bringing this Complaint and Jury Demand against Defendants NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION, d/b/a METRA ("Metra"), VICTOR FLORES ("Flores"), ADAM FARENCE ("Farence"), and PATRICIA EMANUEL ("Emanuel") in their individual capacities (collectively "Defendants") for violations of rights of equal protection under the Fourteenth Amendment to the Constitution of the United States as well as violations of rights under 42 U.S.C. § 1981, pursuant to 42 U.S.C. § 1983, and violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended . In support of his claims, Plaintiff states as follows:

### JURISDICTION AND VENUE

1.     Jurisdiction is proper under 28 U.S.C. § 1331 because this action arises under the laws of the United States. This action is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's constitutionally protected rights under the equal protection clause of the Fourteenth Amendment of the United States Constitution and Plaintiff's federally protected

rights under 42 U.S.C § 1981 for race discrimination and under Title VII of the Civil Rights Act of 1964, as amended, for race, religion, and national origin discrimination, hostile work environment, and retaliation.

2.  Plaintiff filed three charges of discrimination with the Illinois Department of Human Rights ("IDHR"). Plaintiff filed his first charge with the IDHR on or about October 29, 2019. On or about October 6, 2020, IDHR issued a notice of right to sue that would have expired on February 15, 2021. On February 12, 2021, the parties entered into an agreement to toll the statute of limitations on Plaintiff's right to sue until August 10, 2021. Plaintiff filed a second amended charge with the IDHR on June 20, 2020. On or about May 26, 2021, IDHR issued a Notice of Substantial Evidence and Notice of Dismissal, giving Plaintiff until August 24, 2021 to pursue the claims in his second amended charge. On August 6, 2021, Plaintiff requested a right to sue from the IDHR, and on or about December 16, 2021, Plaintiff received the Notice of Right to Sue letter from the U.S. Department of Justice.

3.  Venue is proper under 28 U.S.C. § 1391(b). The parties reside and/or conduct business in this judicial district and the events giving rise to the claims asserted herein occurred in this judicial district as well.

## THE PARTIES

4.  Plaintiff BELIGH SRAIEB ("Plaintiff") has been an employee of Metra since October 24, 2016. Plaintiff's most recent position at Metra was locomotive engineer.

5.  Defendant NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION, d/b/a METRA ("Metra") is a unit of local government operating under the Regional Transportation Authority Act that conducts business in Chicago, Illinois and its

surrounding area as a commuter railway corporation.  At all times relevant in this Complaint, Metra employed Plaintiff.

6. During the events complained of, Defendant VICTOR FLORES ("Flores") was an employee of Metra.  During relevant times in this Complaint, Flores was the District Superintendent for Metra's Chicago Union Station.  Flores is sued in his individual capacity.  At all relevant times, Flores was acting in the course and scope of his employment.  Upon information and belief, Flores is now the Chief Transportation Officer for Metra.

7. During the events complained of, Defendant ADAM FARENCE ("Farence") was an employee of Metra.  During relevant times in this Complaint, Farence was the Road Foreman of Engines at Metra until his promotion to Senior Trainmaster sometime in 2019.  Farence is sued in his individual capacity.  At all relevant times, Farence was acting in the course and scope of his employment.

8. During the events complained of, Defendant PATRICIA EMANUEL ("Emanuel") was an employee of Metra.  At all times relevant in this Complaint, Emanuel was the Director of Metra's EEO and Diversity Office. Emanuel is sued in her individual capacity.  At all relevant times, Emanuel was acting in the course and scope of her employment.

## FACTUAL ALLEGATIONS

9. Born in Tunisia, Plaintiff is an Arab and he is Muslim.

10. Plaintiff is the only Arab locomotive engineer and only Muslim locomotive engineer at Defendant's Chicago Union Station District.

11. Plaintiff was hired by Metra as a locomotive engineer on or about October 24, 2016.  Plaintiff operates Metra's passenger trains.

3

12. Plaintiff was performing his duties as a locomotive engineer in a satisfactory or above-satisfactory manner at all times during his employment.

13. During and throughout his employment at Metra, Plaintiff was the subject of offensive, harassing, and hostile remarks made about his religion, ethnicity, and national origin by other employees at Metra.

14. The offensive, harassing and hostile remarks were made directly to Plaintiff and/or were made over Metra's radio communications system and/or over social media.

15. Plaintiff informed Metra of the harassment, including which employees were responsible for the harassment. Plaintiff reported the harassment to Flores and Metra's EEO department, led by Emanuel.

16. This included, but is not limited to, one incident in January of 2017 when, while watching the presidential inauguration, employees yelled at Plaintiff, "F**k your Allah," and "your Allah tells you to kill people." When Plaintiff told the employees to stop, Plaintiff was reported to management.

17. Employees at Metra maintained an unofficial Facebook group for Metra's employees. On the group's page, members would post and promote anti-Muslim statements and propaganda.

18. Beginning in or around April of 2017, Plaintiff applied for several promotions within Metra. Since April of 2017, Plaintiff has applied to 16 positions and has undergone eight interviews.

19. In or around July of 2019, Plaintiff applied and was interviewed for a position as Road Foreman of Engines. Plaintiff was qualified for the position. The position would have been a promotion from Plaintiff's locomotive engineer position.

20. After Plaintiff applied for the position of Road Foreman of Engines, Metra removed the posting for the position and re-posted it multiple times in order to lower the qualifications for the position. Upon information and belief, this was done in order to recruit lesser-qualified individuals for the position because Metra did not want to give the position to Plaintiff, even though he was qualified.

21. Plaintiff also applied for a promotion to become Senior PTC Train Operations Engineer on or about October 7, 2019. Plaintiff was qualified for the position.

22. Plaintiff applied for the Senior PTC Train Operations Engineer position at least three times. Each time the position was posted, the qualifications were changed in order to make it easier for others to apply for the position.

23. Plaintiff was not selected for the Senior PTC Train Operations Engineer position. Rather, the position went to another employee who is not Muslim or Arab. Upon information and belief, the individuals selected for the position were less qualified than Plaintiff because they did not have previous experience with the positive train control (PTC) system and did not have the territory qualifications Plaintiff had.

24. Plaintiff also applied for a promotion to a Trainmaster position on or about July 31, 2019. Plaintiff was qualified for the position. Plaintiff applied for the position at least twice.

25. The second time Plaintiff applied for the position, Metra lowered the qualifications for the position so that other less qualified employees could apply.

26. Plaintiff was not selected for the Trainmaster position. Rather, the position went to two other employees, neither of whom are Muslim or Arab. Upon information and belief,

5

the individuals selected for this position were less qualified than Plaintiff because they did not have the rules qualifications that Plaintiff had.

27. Rules qualifications are tested each year to determine an employee's aptitude and understanding of the rules required for operating guidelines in the railroad industry. Each person is given a score each year, which is in part used to evaluate an individual's overall qualifications and performance.

28. Upon information and belief, Metra employs a policy or practice of showing preferential treatment in hiring and promoting White or Caucasian employees over persons of color, particularly in management positions.

29. On or about August 15, 2019, Kinkade, a White/Caucasian, was promoted to become Plaintiff's supervisor. Prior to this date, Plaintiff complained to Flores and to Metra's EEO department, led by Emanuel. Plaintiff told Flores and the EEO he did not feel safe at work with Kinkade as his supervisor because of Kinkade's prior harassment.

30. Upon information and belief, Flores told Kinkade that Plaintiff had made a complaint about him. Kinkade left harassing messages to Plaintiff, including a text message in which he called Plaintiff mentally unstable.

31. Following his complaints, Plaintiff began to receive harassing comments made by anonymous employees over Metra's radio communications system. These comments included direct references to Plaintiff's EEO complaint.

32. Plaintiff was also assigned more onerous work than other employees in his department after filing his EEO complaint.

33. Plaintiff's supervisors also subjected Plaintiff to more frequent operational tests than other employees in the department.

6

34. Upon information and belief, sometime in September of 2019 Kinkade, a supervisor, told a room full of his subordinate employees that Plaintiff had complained about him to Metra's EEO.

35. Upon information and belief, Kinkade gave employees the green light to harass Plaintiff and to retaliate against him for complaining to Metra's EEO.

36. Upon information and belief, Plaintiff's supervisors (other than Kinkade), including Farence, told other employees at Metra that Plaintiff was a "snitch" and that he could not be trusted because of his EEO complaint.

37. Shortly after Plaintiff made his EEO complaint and while it was still pending, Kinkade and Trainmaster Robert Tellin (another supervisor) required Plaintiff to undergo an operational performance test. No reason was given for having Plaintiff undergo the test. Moreover, Plaintiff was required to undergo the test in the presence of Kinkade. Upon information and belief, Tellin was aware of Plaintiff's complaints about Kinkade.

38. Operational performance tests are periodically administered, typically once every few months. After Plaintiff complained about Kinkade to Metra's EEO, he was administered an OPT test every few weeks.

39. Kinkade was demoted after Erick D. Allen from Metra's EEO department recommended the demotion. Upon information and belief, under the leadership of Emanuel, Allen was retaliated against by Metra for finding in favor of Plaintiff.

40. Upon information and belief, on or about September 26, 2019 Kinkade told another employee that he was demoted from Road Foreman of Engines because of Plaintiff, and that he should not trust or talk to Plaintiff.

41. Also on September 26, 2019, Plaintiff received information from another employee that several employees, including Trainmaster Kevin Lynch and Engineer Michael Dering, planned to accuse Plaintiff of being a Muslim terrorist and send pictures to Defendant of explosives wrapped around animals, and threatened Plaintiff's job and well-being.

42. Upon information and belief, the engineers were instructed not to talk to Plaintiff and to give him the cold shoulder, thus isolating him from his coworkers.

43. On or about October 11, 2019, Plaintiff was subjected to another operational efficiency test, this time by Senior Trainmaster Farence. No reason was given for requiring Plaintiff to undergo the extra testing. Upon information and belief, no other locomotive engineers were subjected to extra testing.

44. On or about December 7, 2019, senior PTC test engineer Tom Alonzo told another employee that Plaintiff "better watch his back" because they "had dirt on him."

45. Upon information and belief, several managers at Metra had private discussions about getting Plaintiff decertified from work.

46. Other employees at Metra made false reports about Plaintiff, defaced Plaintiff's name on a publicly posted printed roster, and disparaged him to others because of his EEO activity. For example, upon information and belief Senior Trainmaster Tellin told others that Plaintiff was suing Metra and that he sued "for a living."

47. The defaced roster was posted in front of Trainmaster Kevin Lynch's office for several months. Plaintiff reported the defaced roster to Metra's EEO under the leadership of Emanuel.

48. On March 21, 2020, Plaintiff witnessed a fatality while operating a train; a person committed suicide by stepping in front of the train Plaintiff was operating. Per Defendant's policy, Metra (through Senior Trainmaster Farence) was required to notify Plaintiff by March 23, 2020, whether any violation of policy was alleged to have occurred regarding the fatality. Despite the policy, Metra waited until April 1 to contact Plaintiff to let him know he had been cleared of any wrongdoing. Upon information and belief, this was done so as to cause Plaintiff extreme anxiety and emotional anguish. Plaintiff used vacation time to seek counseling for the incident and was diagnosed with post-traumatic stress disorder ("PTSD") as a result. Plaintiff reported Farence's failure to inform to Metra's EEO.

49. Following the incident and PTSD diagnosis, Plaintiff requested paid leave to recover before returning to work. His request was denied. Plaintiff was provided with only three days of paid leave, and informed Plaintiff that any additional leave he needed to take would be unpaid.

50. Upon information and belief, other employees at Metra who did not engage in protected activity, and who required leave because of similar fatalities, were given two weeks of paid leave.

51. Plaintiff filed discrimination and retaliation charges with the IDHR. Plaintiff's first charge was filed on October 29, 2019, his second amended charge was filed on June 10, 2020, and a third charge for retaliation was filed on April 19, 2021.

52. Since engaging in the protected activity, supervisors at Metra have attempted to threaten, or have actually threatened, to discipline Plaintiff for unwarranted reasons. Upon information and belief this is because of Plaintiff's protected activity of reporting harassment and discrimination.

53. For example, on October 2, 2020, four days after Plaintiff participated in a fact-finding conference by the IDHR, Senior Trainmaster Farence threatened to charge Plaintiff with an alleged schedule violation from two months prior.

54. Per Article 44, part B of the collective bargaining agreement, Metra must inform an employee of discipline within ten days of the alleged conduct warranting discipline.

55. After attorney intervention, Plaintiff was ultimately not disciplined for the alleged schedule violation. However, the threat of discipline by his superior caused Plaintiff significant anxiety and great emotional anguish because it further signaled to him that his superiors were looking for any reason to terminate him or set him up to justify termination.

56. In January of 2021, Plaintiff's log hours were audited by Senior Trainmaster Farence. Farence wrote negative comments in the audit regarding Plaintiff's logbook over issues that Defendant, or Farence, had never raised before.

57. Upon information and belief, Metra's EEO & Diversity Director Patricia Emanuel handled Plaintiff's EEO complaints.

58. Upon information and belief, Emanuel engaged in a pattern and practice of ignoring or dismissing EEO complaints made by employees in protected classes, including Plaintiff.

59. Upon information and belief, Emanuel purposefully worked to undermine Plaintiff's EEO complaints. This includes, but is not limited to, allowing the EEO process to be used as a mechanism for retaliation against Plaintiff and misrepresenting information to the IDHR about Plaintiff's complaints.

**COUNT I: § 1983 VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION FOR RACE DISCRIMINATION AND RETALIATION BY METRA**

60. Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

61. Plaintiff is an Arab American.

62. Plaintiff performed his job well and he was qualified for the promotions to which he applied.

63. Metra discriminated against Plaintiff when it selected other less qualified, non-Arab individuals for the promotions over Plaintiff.

64. Metra also discriminated and retaliated against Plaintiff when it subjected him to different terms and conditions of employment than other non-Arab employees. This includes, but is not limited to, overlooking Plaintiff for promotions and Metra permitting Plaintiff's harassers to create a hostile work environment for him and refusing to take the actions necessary to stop the on-going harassment.

65. Metra's policy or custom enabled its agents and employees to act with deliberate indifference to Plaintiff's constitutional rights, including, but not limited to, the following ways: Employees, including those in director and supervisory positions, actively worked to undermine Plaintiff's rights during the EEO complaint process, informed other employees of Plaintiff's complaints and encouraged them to harass Plaintiff, and used their positions to subject Plaintiff to different terms and conditions of employment than other non-Arab employees and employees who had not engaged in protected activity. Metra's policy was widespread and persistent, as indicated by the number of participants in Plaintiff's discrimination, retaliation and harassment.

66. Metra's discriminatory conduct violated the Equal Protection Clause of the Fourteenth Amendment. Metra caused Plaintiff damages, including, but not limited to, lost potential earnings and emotional harm.

**COUNT II: § 1983 VIOLATION OF PLAINTIFF'S STATUTORILY PROTECTED RIGHT UNDER § 1981 BY VICTOR FLORES IN HIS INDIVIDUAL CAPACITY**

67. Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

68. Plaintiff is an Arab American.

69. Flores violated Plaintiff's federally protected rights in several ways, including, but not limited to, informing Kinkade and others of Plaintiff's EEO complaint and offering other employees his tacit approval to harass and retaliate against Plaintiff. Moreover, Flores participated in a general pattern and practice at Metra in which he retaliated against employees who engaged in protected activity.

70. Victor Flores acted intentionally, deliberately, maliciously, or with reckless disregard for Plaintiff's established federal statutory right to be free from unlawful discrimination. Flores knew or should have known that his conduct would place Plaintiff at risk of harassment and retaliation by Kinkade and others. Flores acted with utter disregard, or intentionally, so as to cause said harassment and retaliation against Plaintiff.

**COUNT III: § 1983 VIOLATION OF PLAINTIFF'S STATUTORILY PROTECTED RIGHTS UNDER § 1981 BY ADAM FARENCE IN HIS INDIVIDUAL CAPACITY**

71. Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

72. Plaintiff is an Arab American.

73. After Plaintiff engaged in protected activity, Farence violated Plaintiff's federally protected rights in several ways, including, but not limited to, four days after Plaintiff's fact-finding conference with the IDHR Farence threatened to charge Plaintiff with an old alleged schedule violation, placing Plaintiff in fear of discipline and losing his job after he experienced a fatality at work, and subjecting Plaintiff to extra performance tests and audits.

12

74. Farence acted intentionally, deliberately, maliciously, or with reckless disregard for Plaintiff's established federal statutory right, in that Farence knew that when he was subjecting Plaintiff to different terms or conditions of employment and placing him in apprehension of discipline and fear of losing his job, Farence did so in order to punish Plaintiff for having engaged in protected activity.

**COUNT IV: § 1983 VIOLATION OF PLAINTIFF'S STATUTORILY PROTECTED RIGHTS UNDER § 1981 BY PATRICIA EMANUEL IN HER INDIVIDUAL CAPACITY**

75. Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

76. Plaintiff is an Arab American.

77. Emanuel violated Plaintiff's federally protected rights in several ways, including but not limited to, using her position as Director of Metra's EEO and Diversity to quell Plaintiff's complaints of discrimination, harassment, and retaliation by ignoring and dismissing Plaintiff's complaints, encouraging other employees to use Metra's EEO process to retaliate against Plaintiff, and by providing false or misleading information to the IDHR about Plaintiff's complaints.

78. Emanuel acted intentionally, deliberately, maliciously, or with reckless disregard for Plaintiff's established federal statutory right so as to protect Metra's interests against complaints of discrimination, harassment and retaliation by employees like Plaintiff.

**COUNT V: TITLE VII RACE DISCRIMINATION BY METRA**

79. Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

80. Plaintiff is an Arab American.

81. Plaintiff performed his job well and he was qualified for the promotions to which he applied.

13

82. Defendant discriminated against Plaintiff when it selected other less qualified non-Arab individuals for the promotions over Plaintiff.

83. Defendant also discriminated against Plaintiff when it subjected him to different terms and conditions of employment than other non-Arab employees. This includes, but is not limited to, Defendant permitting Plaintiff's harassers to create a hostile work environment for him and refusing to take the actions necessary to stop the harassment.

84. Defendant's discriminatory conduct caused Plaintiff damages, including, but not limited to, lost potential earnings and emotional harm.

## COUNT VI: TITLE VII RELIGIOUS DISCRIMINATION BY METRA

85. Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

86. Plaintiff is Muslim American.

87. Plaintiff performed his job well and he was qualified for the promotions to which he applied.

88. Defendant discriminated against Plaintiff when it selected other less qualified, non-Muslim individuals for the promotions over Plaintiff.

89. Defendant also discriminated against Plaintiff when it subjected him to different terms and conditions of employment than other non-Muslim employees. This includes, but is not limited to, Defendant permitting Plaintiff's harassers to create a hostile work environment for him and refusing to take the actions necessary to stop the harassment.

90. Defendant's discriminatory conduct caused Plaintiff damages, including, but not limited to, lost potential earnings and emotional harm.

## COUNT VII: NATIONAL ORIGIN DISCRIMINATION BY METRA

91. Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

92. Plaintiff is of Tunisian national origin.

93. Plaintiff performed his job well and he was qualified for the promotions to which he applied.

94. Defendant discriminated against Plaintiff when it selected other less qualified, non-Tunisian individuals for the promotions over Plaintiff.

95. Defendant also discriminated against Plaintiff when it subjected him to different terms and conditions of employment than other non-Tunisian employees. This includes, but is not limited to, Defendant permitting Plaintiff's harassers to create a hostile work environment for him and refusing to take the actions necessary to stop the harassment.

96. Defendant's discriminatory conduct caused Plaintiff damages, including, but not limited to, lost potential earnings and emotional harm.

**COUNT VIII: TITLE VII HOSTILE WORK ENVIRONMENT BASED ON RELIGION, RACE, AND NATIONAL ORIGIN BY METRA**

97. Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

98. Plaintiff was employed at Defendant as a Locomotive Engineer.

99. Defendant was aware that Plaintiff was Muslim, Arab, and Tunisian.

100. The harassment Plaintiff endured was based on his Islamic beliefs, Arab race, and/or Tunisian national origin.

101. The harassment was so severe or pervasive that it changed the conditions of employment and created a hostile work environment as perceived by Plaintiff and which any reasonable person would also find. This includes, but is not limited to, placing Plaintiff in unending fear that he would be disciplined or given poor performance evaluations, setting Plaintiff up with poor performance evaluations so as to fire him, instructing other employees not to interact with him, allowing supervisors and employees to make disparaging remarks to

and about Plaintiff, and telling other employees that Plaintiff was a "snitch" because he engaged in protected activity.

102. Metra is liable because it knew about its employees' offensive, unrelenting conduct and yet failed to take the necessary corrective action.

103. The harassment caused Plaintiff damages, including but not limited to lost income and emotional harm.

## COUNT IX: TITLE VII RETALIATION BY METRA

104. Plaintiff reasserts and realleges all previous paragraphs as if fully stated herein.

105. Plaintiff engaged in protected activity, including but not limited to, when he (1) filed an internal EEO complaint regarding the discrimination and harassment that he experienced and (2) when he filed with the IDHR a charge of religious and ethnic discrimination against Metra.

106. After plaintiff filed his internal EEO complaint, Metra retaliated against Plaintiff in the terms and conditions of his employment, including, but not limited to, when Plaintiff's supervisors informed his co-workers of the EEO complaint, discouraged co-workers from interacting with Plaintiff, harmed Plaintiff's reputation by labeling him as a "snitch" and someone not to be trusted, assigned more onerous work than other employees in his department, passed Plaintiff up for promotions, and subjected Plaintiff to more frequent operational testing than before filing his complaint.

107. After Plaintiff filed his charge of discrimination with the IDHR (No. 2021 CF 2649) and four days after the IDHR fact-finding conference, Metra again retaliated against Plaintiff in the terms and conditions of his employment by trying to discipline Plaintiff in clear and direct violation of the Collective Bargaining Agreement.

108. As a proximate result of the practices alleged, Plaintiff has suffered and will continue to suffer substantial and irreparable injury, including but not limited to lost income and emotional harm.

109. Metra's actions were intentional, willful, and malicious, or were committed with reckless indifference to Plaintiff's protected rights under the Illinois Human Rights act and federal law.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE Plaintiff BELIGH SRAIEB respectfully requests the Honorable Court grant judgment in his favor and against Defendant, awarding:

A. Actual damages;

B. Compensatory damages;

C. An injunction prohibiting defendant from continuing unlawful employment practices;

D. A promotion to either of the positions that Plaintiff applied: Trainmaster, Road Foreman of Engines, or PTC Test Engineer;

E. Punitive damages as to Defendants Adam Farence, Victor Flores, and Patricia Emanuel;

F. Costs;

G. Attorney's fees; and

H. Such other relief as the Court deems just and equitable.


Respectfully Submitted,
BELIGH SRAIEB
Plaintiff

By:

| | |
|---|---|
| *[signature]* | *[signature]* |
| Christina Abraham, Esq. | Janaan Hashim, Esq. |
| Abraham Law and Consulting, LLC | Amal Law Group, LLC |
| 161 N. Clark Street, Suite 1600 | 161 N. Clark Street, Suite 1600 |
| Chicago, IL 60601 | Chicago, IL 60601 |
| (312) 588-7150 | (312) 882-4122 |
| Christina.w.abraham@gmail.com | jhashim@amallaw.com |

Attorneys for Plaintiff

January 31, 2022